UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

IN RE:
DANIEL W. KAPPELER,                              Chapter 7
        DEBTOR.                              Case No. 11-18166-WCH

DUCHARME ESTATES, LTD.,
        PLAINTIFF,
                                                 Adversary Proceeding
v.                                               No. 13-1166

DANIEL W. KAPPELER,
        DEFENDANT.

**MEMORANDUM OF DECISION**

**I. INTRODUCTION**

The matter before the Court is the "Debtor's Motion for Judgment on the Pleadings" (the "Motion") filed by Daniel W. Kappeler (the "Debtor"), and the objection thereto filed by the plaintiff, Ducharme Estates, Ltd. (the "Plaintiff"). The Plaintiff filed a complaint (the "Complaint") seeking a determination that the debt owed to it by the Debtor is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A)[1] as one obtained by fraud. The Debtor moved for judgment on the pleadings, asserting that the Complaint failed to plead fraud with particularity and/or otherwise failed to state a claim upon which relief can be granted. For the reasons set forth below, I will deny the Motion, but order the Plaintiff to file an amended complaint.

---

[1] Unless expressly stated otherwise, all references to the "Bankruptcy Code" or to specific sections shall be to the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23, 11 U.S.C. § 101, *et. seq.*

1

## II. BACKGROUND

### A. Allegations in the Complaint

The Complaint alleged the following facts, which I must accept as true for the purpose of a motion for judgment on the pleadings brought under Federal Rule of Civil Procedure 12(c).[2]

The Debtor is a licensed journeyman electrician in the Commonwealth of Massachusetts.[3] On or about June 14, 2006, the Plaintiff hired the Debtor to perform electrical work at the Plaintiff's assisted living facility in Blackstone, Massachusetts.[4] The Plaintiff was expanding from a nine to a fifteen bed facility, which required new electrical installations and a new fire alarm system.[5] The scope of the work included wiring the facility's pool area on a 220 volt circuit, installing up to code smoke and heat detectors, and installing a four zone fire alarm control panel.[6] The Debtor represented that he would perform the electrical work and install the fire alarm system according to the applicable code.[7] He also represented that he was a master electrician.[8] Pursuant to the parties' contract, the Plaintiff paid the Debtor a total of $36,077.28 for the work performed.[9] The last invoice the Debtor submitted was for $35,000.00, which the

---

[2] *See Banco Santander De Puerto Rico v. Lopez-Stubbe (In re Colonial Mortg. Bankers Corp.)*, 324 F.3d 12, 15 (1st Cir. 2003). Federal Rule of Civil Procedure 12(c) is made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7012.

[3] Complaint, Docket No. 1 at ¶ 11.

[4] *Id.* at ¶ 13.

[5] *Id.* at ¶¶ 14-15.

[6] *Id.* at ¶ 16.

[7] *Id.* at ¶ 18.

[8] *Id.* at ¶ 19.

[9] *Id.* at ¶ 20.

2

Plaintiff paid with the understanding that all work had been completed, was up to code, and had been inspected.[10]

On or about September 15, 2010, the fire alarm system installed by the Debtor began to malfunction.[11] The Plaintiff attempted to contact the Debtor without success, and subsequently hired Omega Alarm Co. ("Omega") to inspect the system.[12] On September 16, 2010, Omega discovered that the system was only suitable for residential properties and did not meet the code requirements for commercial assisted living facilities.[13] Over the next 18 months, Omega repeatedly returned to the Plaintiff's premises to remove the system the Debtor had installed and replace it with a code-compliant fire alarm system.[14] The Plaintiff paid Omega a total of $9,257.00 for its work.[15]

On February 23, 2012, before Omega had finished its work, the fire inspector for the town of Blackstone cited the Plaintiff for having a sub-code fire alarm system.[16] The code violation notice stated that the previous installer (i.e. the Debtor) had failed to complete the installation, maintenance, and testing of the system.[17] Concerned about the Debtor's work, and as the wiring in the pool area had also begun to manifest problems, the Plaintiff then hired

---

[10] *Id.* at ¶ 21.

[11] *Id.* at ¶ 22.

[12] *Id.* at ¶¶ 23-24.

[13] *Id.* at ¶¶ 25-26.

[14] *Id.* at ¶ 26.

[15] *Id.*

[16] *Id.* at ¶ 27.

[17] *Id.* at ¶ 28.

Dionne Electric to inspect the Debtor's electrical work.[18] Dionne Electric discovered that the wiring the Debtor had installed was inadequate to power the pool area, and the Plaintiff paid Dionne Electric $6,255.00 to uncover and correct the Debtor's work.[19]

B. Procedural History

On August 29, 2011, the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code. The Debtor did not list the Plaintiff as a creditor on "Schedule F - Creditors Holding Unsecured Nonpriority Claims" ("Schedule F"). According to the Debtor, he was at that time unaware of any potential claims against him by the Plaintiff.[20] On December 13, 2011, the Court issued an order discharging the Debtor, and the case was closed on January 23, 2012.

On October 12, 2012, the Plaintiff served the Debtor with a summons and complaint filed in the Massachusetts Superior Court for Bristol County, seeking damages arising out of the work he had done.[21] On April 5, 2013, the Debtor filed a motion to reopen his bankruptcy case, which I granted on April 22, 2013. On April 24, 2013, the Debtor filed a motion to amend Schedule F and the Creditor Matrix to include the Plaintiff as a creditor asserting a contingent, unliquidated, and disputed claim. The Debtor also added Maria Ducharme-Dos Santos ("Ducharme"), the owner of the property on which the Plaintiff's assisted facility is located, as a creditor. I granted the motion to amend on April 25, 2013.

---

[18] *Id.* at ¶¶ 29-30.

[19] *Id.* at ¶ 31.

[20] "Memorandum of Law in Support of Debtor's Motion for Judgment on the Pleadings" (the "Debtor's Memorandum"), Docket No. 15 at 2.

[21] *Id.* at 2-3.

4

On June 25, 2013, the Plaintiff filed the Complaint seeking a determination that the debt owed by the Debtor is excepted from discharge pursuant to § 523(a)(2)(A). In addition to the facts recited above, the Complaint alleged that:

> 34. [The Debtor] represented that he was a master electrician and thus properly licensed and competent to perform the work and also represented that he had completed all work to code standards and that all work had passed inspection.
>
> 35. These were representations of existing material facts that [the Debtor] knew was false, that was in fact false, and that [the Debtor] intended the Plaintiff to rely upon knowing full well that the Plaintiff was not aware of the truth of the matter.
>
> 36. The Plaintiff did justifiably rely upon [the Debtor's] statements and representations.
>
> 37. As a direct and proximate result of the misrepresentations, Plaintiff suffered damages in an amount to be proven at trial.

On October 11, 2013, the Debtor filed the Motion, and the Plaintiff subsequently filed an objection thereto. I held a hearing on the matter on December 4, 2013, at which only the Debtor's counsel appeared. At the conclusion of the hearing, I took the matter under advisement.

### III. POSITIONS OF THE PARTIES

A. The Debtor

The Debtor first argues that the Complaint fails to state a claim upon which relief can be granted because it does not contain facts to support each element of fraud under § 523(a)(2)(A). The Debtor divided the alleged misrepresentations into two categories—the so-called Licensure Representation ("that he was a master electrician and thus properly licensed and competent to perform the work") and the Inspection Representation ("that he had completed all work to code standards and that all work had passed inspection"). He contends that the Licensure Representation was immaterial, because a journeyman electrician's license permits an electrician

5

to perform any and all work that a master electrician can.[22] The Debtor further asserts that the Complaint failed to allege that the Inspection Representation caused the Plaintiff harm. He argues that any damages the Plaintiff suffered resulted from his allegedly substandard work, not from any false statement he made. Finally, the Debtor asserts that Complaint failed to allege justifiable reliance on the representations. As to the Inspection Representation, he contends that Massachusetts law requires an assisted living facility to obtain a copy of all current building and fire safety code certificates and permits.[23] The Debtor argues that the Plaintiff could have, and should have, verified either representation by simply asking for a copy of his license or the inspection reports, or obtaining them through the relevant government agencies.

The Debtor next argues that the Complaint failed to plead fraud with particularity pursuant to Federal Rule of Civil Procedure 9(b), because the Complaint does not specify where and when the Debtor's representations were made. In light of these deficiencies, the Debtor asserts that the Complaint ought to be dismissed with prejudice.

Finally, the Debtor argues that the Plaintiff lacks standing to pursue this adversary proceeding. The Debtor asks the Court to take judicial notice of various documents which, according to him, evidence that Ducharme hired the Debtor in her individual capacity. Alternatively, the Debtor contends that the three-year statute of limitations for a fraud claim had run by the time he filed his bankruptcy petition in August 2011. The Debtor asserts that the Plaintiff's cause of action arose in June 2006, when the misrepresentations were allegedly made, and that there is no basis for tolling the statute of limitations, since the falsity of his

---

[22] Debtor's Memorandum, Docket No. 15 at 7-8 (*citing* M.G.L. ch. 141 § 1).

[23] *Id.* at 10 (*citing* 651 Mass. Code Regs. 12.03(2)(f)).

6

representations was ascertainable with minimal diligence and the Plaintiff has not asserted that he actively concealed the cause of action.

    B. The Plaintiff

The Plaintiff's objection to the Motion consisted of only one stream of consciousness paragraph. The Plaintiff asserts that it hired the Debtor, not Ducharme, as evidenced by the fact that the Debtor was paid with checks drawn on the Plaintiff's bank account. The Plaintiff also contends that because it did not discover any problems with the Debtor's work until September 15, 2010, the statute of limitations was tolled until then. Thus, the Plaintiff argues that it had until September 15, 2013 to file a claim for fraud against the Debtor. The Plaintiff did not address the Debtor's other arguments.

## IV. DISCUSSION

    A. The Rule 12(c) Standard

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings at any time "[a]fter the pleadings are closed—but early enough not to delay trial."[24] "A motion for judgment on the pleadings is treated much like a Rule 12(b)(6) motion to dismiss."[25] Accordingly, the court must assume the truth of all well-pleaded facts and draw all reasonable inferences in the nonmovant's favor.[26] "The court may supplement the facts contained in the pleadings by considering documents fairly incorporated therein and facts

---

[24] Fed. R. Civ. P. 12(c).

[25] *Perez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008) (*citing Curran v. Cousins,* 509 F.3d 36, 43–44 (1st Cir.2007)).

[26] *In re Colonial Mortg. Bankers Corp.*, 324 F.3d at 15.

7

susceptible to judicial notice."[27] Nevertheless, "[t]here is no resolution of contested facts in connection with a Rule 12(c) motion."[28]

From the outset, I note that two of the Debtor's arguments are premature on a Rule 12(c) motion. First, the Debtor argues that the Plaintiff has no standing to bring the Complaint because Ducharme hired him in her individual capacity. This directly contradicts the Complaint's allegation that the Plaintiff hired him, which I must assume is true for the purposes of the Motion. In any event, the Debtor failed file his affidavit and the exhibits thereto, which he repeatedly referenced in his memorandum as evidencing that Ducharme is the proper party to bring the claim.[29] Second, the Debtor asserts that the Plaintiff's claim is barred by the statute of limitations because it was not brought within three years of the alleged misrepresentations. In contrast, the Plaintiff argues that because it did not discover the Debtor's defective work until 2010, the Massachusetts discovery rule would toll the statute of limitations. In determining whether the discovery rule applies, what a plaintiff knew or should have known concerning its injury is a factual question.[30] Accordingly, I will not address the Debtor's arguments concerning standing and the statute of limitations at this juncture.

B. <u>Failure to Plead Fraud with Particularity</u>

Federal Rule of Civil Procedure 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."[31] In general, this

---

[27] *R.G. Fin. Corp. v. Vergara-Nunez*, 446 F.3d 178, 182 (1st Cir. 2006).

[28] *Id.*

[29] The Debtor did file an affidavit from his counsel with supporting exhibits from the Worcester County Register of Deeds. The exhibits show only that Ducharme is the record owner of the property on which the Plaintiff's assisted living facility is located, not that she hired the Debtor.

[30] *Koe v. Mercer*, 450 Mass. 97, 101 (2007).

[31] Fed. R. Civ. P. 9(b), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7009.

8

means "[t]he party alleging fraud must specify '(1) the allegedly fraudulent statements; (2) the identity of the speaker; (3) where and when the statements were made; and (4) why the statements were fraudulent.'"[32] In the bankruptcy context, however, courts evaluate allegations of fraud more liberally than in other civil actions.[33] Nevertheless, a complaint in an adversary proceeding must still "set forth the facts with sufficient particularity to apprise the defendant fairly of the charges made against him . . . so that the defendant can prepare an adequate answer to the allegations."[34] This effectuates the primary purposes of Rule 9(b), which are to "give the defendant adequate notice of the fraud claim" and to "prevent[] a plaintiff from filing first and searching for a cause of action later."[35]

Further, pursuant to Federal Rule of Civil Procedure 15(a)(2), the court "should freely give leave [to amend a complaint] when justice so requires."[36] "Reasons for denying leave include undue delay in filing the motion [to amend], bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility of amendment."[37]

---

[32] *In re Receivership Estate of Indian Motorcycle Mfg., Inc.*, 299 B.R. 36, 44 (D. Mass. 2003) (*quoting In re Allaire Corp. Sec. Litig.,* 224 F.Supp.2d 319, 325 (D. Mass. 2002)).

[33] *Nisselson v. Ford Motor Co.* (*In re Monahan Ford Corp. of Flushing*), 340 B.R. 1, 21-22 (Bankr. E.D.N.Y. 2006).

[34] *Hasset v. Zimmerman* (*In re O.P.M. Leasing Servs., Inc.*), 32 B.R. 199, 203 (Bankr. S.D.N.Y. 1983) (internal quotations omitted). *See also Honey Dew Assoc., Inc. v. Monaco* (*In re Monaco*), 347 B.R. 454, 458 (Bankr. D. Mass. 2006) ("Although courts generally evaluate averments of fraud in the bankruptcy context more liberally than in other civil actions charging fraud, the allegations still must be specific enough to ensure a defendant is protected from unfair surprise, strike suits and damage.") (internal quotation omitted).

[35] *In re Receivership Estate of Indian Motorcycle Mfg., Inc.*, 299 B.R. at 44 (*citing Hayduk v. Lanna,* 775 F.2d 441, 443 (1st Cir.1985)).

[36] Fed. R. Civ. P. 15(a)(2), made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7015.

[37] *U.S. ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 48 (1st Cir. 2009) (*citing Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Amendment is futile if "the complaint, as amended, would fail to state a claim upon which relief could be granted."[38]

Here, the Complaint identified the alleged fraudulent statements, the identity of the speaker, why they were fraudulent, and indicated generally at what point in the parties' transaction the statement were made. It failed, however, to provide detail concerning the time and place at which the Debtor made the alleged misrepresentations. As such, it does not meet Rule 9(b)'s heightened pleading requirements.

Nevertheless, given the liberality afforded pleadings of fraud in the bankruptcy context and Rule 15's generous amendment policy, I will grant the Plaintiff a brief opportunity to amend the Complaint rather than dismiss it. The Complaint contained ample information to put the Debtor on fair notice of the nature of the charges against him, and thus no prejudice will result from allowing the Plaintiff to provide more detail concerning the time and place of the alleged misrepresentations. Accordingly, so long as amendment would not be futile, I will afford the Plaintiff an opportunity to amend the Complaint so that it complies with Rule 9(b). I now turn the question of whether the Plaintiff's allegations state a plausible claim for relief.

C. Failure to State a Claim

To survive a Rule 12(c) motion, as with a Rule 12(b)(6) motion to dismiss, "a complaint must contain factual allegations that 'raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true.'"[39] Put another way, the complaint must contain "enough facts to state a claim to relief that is plausible on its face."[40] "Dismissal

---

[38] *Goldsmith v. LBM Fin., LLC (In re Loucheschi LLC)*, 496 B.R. 41, 45 (Bankr. D. Mass. 2013).

[39] *Perez-Acevedo v. Rivero-Cubano*, 520 F.3d at 29 (*quoting Bell Atlantic v. Twombly,* 550 U.S. 544, 555 (2007)).

[40] *Bell Atl. Corp. v. Twombly*, 550 U.S. at 570.

for failure to state a claim is appropriate if the complaint fails to set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'"[41] In this case, the Plaintiff has alleged that the debt the Debtor owes is excepted from discharge pursuant to § 523(a)(2)(A) as one obtained by fraud.[42] Thus, to avoid dismissal, the Complaint must contain facts that either directly or inferentially support each of the following elements:

(1) the debtor made a knowingly false representation or one made in reckless disregard of the truth;

(2) the debtor intended to deceive;

(3) the debtor intended to induce the creditor to rely upon the false statement;

(4) the creditor actually relied upon the misrepresentation;

(5) the creditor's reliance was justifiable; and

(6) the reliance upon the false statement caused damage.[43]

### 1. Materiality

The Debtor argues that the representation that he had a master electrician's license was immaterial to his qualifications, because under Massachusetts law a journeyman electrician is qualified to perform all the same work as a master electrician. Massachusetts General Laws ch. 141 § 1 defines a "journeyman electrician" as:

a person qualified to do the work of installing, repairing, or maintaining wires, conduits, apparatus, devices, fixtures, or other appliances used for heat, light, power, fire warning or security system purposes.[44]

---

[41] *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (*quoting Centro Médico del Turabo, Inc. v. Feliciano de Melecio,* 406 F.3d 1, 6 (1st Cir.2005)).

[42] *See* 11 U.S.C. § 523(a)(2)(A) ("A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-- false pretenses, a false representation, or actual fraud . . . ).

[43] *McCrory v. Spigel (In re Spigel)*, 260 F.3d 27, 32 (1st Cir. 2001) (footnote omitted) (*citing Palmacci v. Umpierrez,* 121 F.3d 781, 786 (1st Cir. 1997)).

It defines a "master electrician" as:

> a person, firm or corporation having a regular place of business who, by the employment of journeyman or apprentices, performs the work of installing, repairing or maintaining wires, conduits, apparatus, devices, fixtures or other appliances used for light, heat, power, fire warning or security system purposes . . . .[45]

Thus, a master electrician's license is only necessary to employ other electricians; there is no difference between the actual electrical work a journeyman electrician and a master electrician may perform.

Accordingly, the Debtor is correct that the representation that he had a master electrician's license cannot support a claim for fraud. The only basis of the alleged fraud was that the Debtor claimed to be qualified to do work he was not licensed to perform. I am not bound to accept as true the Complaint's faulty legal conclusion that, "[u]pon information and belief, the above described work for a commercial assisted living facility should be performed by a master electrician."[46] The Complaint does not allege any other reason why the Debtor's lack of a master electrician's license is material. Consequently, with regard to the Debtor's statement that he had a master electrician's license, the Complaint fails to state a claim on which relief may be granted.

Nevertheless, the Complaint alleges that the Debtor made three other misrepresentations—that he was "competent to perform the work," that he "had completed all work to code standards," and that "all work had passed inspection."[47] The Debtor is not entitled to a dismissal of the Complaint unless he shows that each of these representations fails to support

---

[44] M. G. L. ch. 141 § 1.

[45] *Id.*

[46] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

[47] Complaint, Docket No. 1 at ¶ 34.

12

a claim for fraud. In fact, because the Debtor conflates the representation that he had a master license and the representation that he was competent to perform the work into one category, his argument never addresses whether the Complaint states a plausible claim for relief on the basis of the latter statement.

### 2. Damages

The Debtor next argues that the Complaint fails to allege that the representations that all work was completed up to code standards and had been inspected harmed the Plaintiff. Instead, the Debtor asserts that the Plaintiff's damages resulted from his substandard work. This argument fails for two reasons. First, the Complaint alleges that the Plaintiff paid the Debtor $35,000.00 on the basis of these representations. Moreover, the Complaint alleges that the Plaintiff was cited for having a fire alarm system that was not in compliance with the applicable code. The Debtor's argument ignores these potential damages and speaks only to the money the Plaintiff expended to repair the Debtor's defective installations. Second, causation of damages is an inherently factual issue. Taking the facts alleged in the Complaint as true, it is at least plausible that the representations caused or aggravated the damages the Plaintiff sustained, as it was unaware of any problems until the fire alarm system began to actively malfunction. On a motion for judgment on the pleadings, it would be premature to adopt the Debtor's proposed theory concerning the causation element of fraud.

### 3. Justifiable Reliance

Lastly, the Debtor argues that the Complaint fails to allege that the Plaintiff justifiably relied on the Debtor's misrepresentations. Generally, the justifiability of a plaintiff's reliance on a debtor's misrepresentation is a factual determination which takes into account "the qualities

and characteristics of the particular plaintiff, and the circumstances of the particular case."[48] Nevertheless, a court may dismiss a complaint if the facts alleged therein preclude a finding of justifiable reliance.[49]

The Debtor argues that, as a matter of law, the Plaintiff cannot establish that it justifiably relied on the representations that the work was up to code and had been inspected because it had an affirmative duty to obtain a copy of the inspection reports. The Debtor relies on Title 651 of the Code of Massachusetts Regulations, which requires an assisted living facility to submit an operating plan which includes, "[a] copy of all required current building, fire safety, and locally approved state sanitary code certificates and permits" to become state-certified.[50] The regulation further requires assisted living facilities to keep all of the information in the operating plan current post-certification.[51]

While I may take judicial notice of these state regulations, it is unclear to what extent they apply to the case at hand. The Complaint alleges only that the Debtor failed to perform the work in compliance with the "applicable code" and failed to have the work inspected.[52] Thus, from the facts currently in the record, I cannot conclusively determine which certificates or permits, if any, the Plaintiff was required to obtain once the work was completed. In particular, it is not immediately apparent whether an inspection report for the electrical work would fall

---

[48] *See Field v. Mans*, 516 U.S. 59, 71 (1995).

[49] *Cf. Rodi v. S. New England Sch. of Law*, 389 F.3d 5, 16 (1st Cir. 2004) (discussing application of the reasonable reliance standard on a fraud claim brought under Massachusetts law and finding that "[w]hen, however, the facts alleged in the complaint preclude a finding of [reliance], a court may enter an order of dismissal under Rule 12(b)(6).").

[50] 651 Mass. Code Regs. 12.03(2)(f)(9).

[51] 651 Mass. Code Regs. 12.04(13)(b).

[52] Complaint, Docket No. 1 at ¶ 18.

under the category of a required building, fire safety, or sanitary code certificate. Accordingly, without additional facts, I cannot find that the Plaintiff failed to comply with Title 651 of the Code of Massachusetts Regulations.

The Debtor also contends that that Plaintiff cannot establish justifiable reliance because it could have verified these misrepresentations simply by asking for a copy of the inspection reports.[53] Once again, I will decline the Debtor's invitation to make a finding of fact before it is proper to do so. A finding of justifiable or unjustifiable reliance requires taking into account the qualities and characteristics of the parties and the circumstances of the case—which facts are not yet adequately developed in the record. Moreover, the Debtor's argument yet again conflates two distinct representations into one—treating the statement that the Debtor had completed the work up to code standards and the statement that he had the work inspected as one representation. While related, these are distinct representations. The Debtor's argument concerning the ease of verification applies only to the representation that the work was inspected. Ultimately, I find that the question of whether the Plaintiff justifiably relied on the Debtor's statements may not be determined solely on the basis of the pleadings.

---

[53] The Debtor makes a similar argument concerning the Debtor's representation that he had a master electrician's license, contending that the Plaintiff could have verified the statement simply by asking to see the license. Given my finding that this misrepresentation was immaterial, I will not discuss whether the Plaintiff justifiably relied on it.

**V. CONCLUSION**

In sum, I find that the Complaint states a plausible claim for relief on the basis of the misrepresentations that the Debtor was competent to perform the work at issue, that he performed the work up to code standards, and that he had the work inspected. As such, allowing the Plaintiff an opportunity to amend the Complaint to comply with Rule 9(b) and provide greater detail concerning when and where the Debtor made these statements will not be futile. In light of the foregoing, I will enter an order denying the Debtor's Motion and ordering the Plaintiff to file an amended complaint within 28 days.

_____
William C. Hillman
United States Bankruptcy Judge

Dated: January 30, 2014

Counsel Appearing:

    Jonathan Horne, Jager Smith P.C., Boston, MA
        for the Debtor
    Patrick O. Flaherty, Warwick, RI
        for the Plaintiff